May it please the Court, my name is Dionne Maria Lewis, and I represent the appellant in this matter, Ms. Wanda Johnson. This appeal concerns the District Court's erroneous dismissal of Ms. Johnson's Title VII claims under the Rule 12b6 stage, despite the well-planned factual allegations which we assert, if taken as true, establish unlawful discrimination, retaliation, and reverse the dismissal, and remand the case back to the District Court for discovery and subsequent adjudication on the merits. Pursuant to Ashcroft v. Iqbal, Bell Atlantic Court v. Twombly, and Rule 8 of the Federal Rules of Civil Procedure, in relevant part, a 12b6 motion to dismiss the complaint must contain sufficient factual matter accepted as true to state a claim of relief that is plausible on its face, and to make a claim plausible, the factual matter must allow the Court to draw the reasonable inference that the defendant is liable for the misconduct as alleged. As this circuit recognized in McCleary Evans v. Maryland Department of Transportation State Highway Administration, 780 F. 3rd 582 Pennsite 585, a 2015 case from the circuit, at the motion to dismiss stage in an employment discrimination case, a plaintiff is merely required to allege facts to satisfy the elements of a cause of action created by the statute. An appellant, McCleary goes on to say, is not required to plead a prima facie case of discrimination under Title VII, and instead must raise a right to relief above the speculative level. Here, the District Court in its brief, the District Court in its opinion, and Appley in its brief, took issue seemingly with whether the appellant cited adverse actions. One, the denial of overtime was an adverse action pursuant to element three, and two, whether similarly situated employees who were outside of appellant's protected class were treated more fairly, element four. Here, it is our position that the District Court scrutinized the pleadings beyond a threshold pleading standard of plausibility, and made impermissible comparator assessments at this pleading stage in favor of the appellee, which adversely impacted both appellant's discrimination claim and her retaliation claim. How long, there was a trial board here, and the judgment of the trial board went against your client, and how long was the trial board proceeding? How long did that take, the actual hearing? The hearing was scheduled for two days, Your Honor. I was not counsel at that proceeding, but I'm aware that it was a two-day schedule. It took two days? Correct. That's my understanding, that it was scheduled for two days. Was the trial board proceeding a fair one? According to Ms. Johnson, it was not. And as we cited in our complaint, there were many- What was wrong with the trial board proceeding? Well, Your Honor, let me correct myself. In terms of the administration, if you will, of the trial board proceeding, I don't believe that that's my client's position. I believe her position is that there was evidence that came out during the trial board, which to your question about Judge Wilkinson, what was wrong with it was the fact that there was, one, a detective that apparently made false statements that were contradicted by the record, and we do cite to this in our amended complaint. And two, that there was- Well, I mean, obviously, any trial board or trial court would have to resolve some inconsistencies on the competing testimony, and would have to make some kind of resolution of it the same way a district court would have to make. But the charges here, and Judge Bennett was looking at it, the charges here against Ms. Johnson were, number one, for assault, and number two, for failure to notify her supervisors about the incidents, and for making false statements on two separate occasions. And then the district court goes through the different that charges were never filed, or, I forget, one of these. You made a particular point of having Mr. Cushaw be one of the comparatives, and the district court says, Judge Bennett says, while plaintiff insists that Cushaw made false statements and provided false testimony, he was not, never charged for such conduct, nor were such charges considered by a trial board. Accordingly, Cushaw is not an appropriate comparator. And he did this with respect to each of these supposed comparatives and showed in what instance they were different here, and said they didn't all, they did not all involve charges sustained by the trial board for three different things, assault, failing to notify supervisors, and making false statements during the course of the investigation. And so I think that one of the difficult things you have here is what went on, is the fact that the trial board ruled adversely to you, and that the supposed comparatives didn't really, some of them involved different circumstances. Thank you for your question, Judge Wilkinson. So first, I would posture that the district court's decision did not go into the level of detail with all of the comparators. Twelve that were cited as it relates to essentially... Twelve were cited in the complaint? Yes, Your Honor. Go ahead, I'm sorry. Judge Kim, yes. Twelve were cited in the complaint as it relates specifically to the constructive discharge claim, and then four were cited as it relates to the specific overtime claim, or what we would call the denial of overtime, or lack of permittance for her to engage in overtime claim. So, Judge Wilkinson, to your question, we would note that the district court also considered Baltimore Police Department's Policy 310, which is essentially their disciplinary policy. And you can find that notation to the court's reference at JA092. And what we would purport is that here, what we're arguing is that there was disproportionate towards the appellant in this matter, in comparison, which was not accounted for by the district court in its analysis, and which, quite frankly, could not really be assessed without discovery. And so we would posture that the district court stepped into really an inappropriate trier of fact role beyond more than... Because we're at the 12B6 stage where we're looking at the comparators, and we do have case law that says there's, even on the merits, the comparators don't have to be a one-on-one match, correct? That's correct, Your Honor. And is Kulshaw the one that was convicted of assault? Correct, Your Honor, which, again, brings us to part of the issue. So, while perhaps the partner chose not, for whatever reason, which could potentially be explored in discovery, should we get that far, for not pursuing charges or trial board charges against him, which, Judge Wilkinson, just to go back, is actually a state law issue. It's not really a federal law issue. So, technically, Ms. Johnson does have rights, and officers generally have rights, to appeal a trial board decision to the next step. And then there would be a circuit court ruling as to whether or not the final decision was proper or appropriate or not. But, however, because the appellant in this matter resigned, that kind of analysis ends, so we don't actually know what the state court would have indicated as to whether or not the trial board was, in fact, proper. But, yes, Your Honor, there is Haysaw, which we have also cited, too, Mitchell v. Toledo Hospital. It's a Sixth Circuit case, but it's also referencing the Fourth Circuit 2017 case of Suazo v. Ansos County Board of Education, where, to your point, Judge Thacker, the comparators just need to have sufficient commonalities that would allow a jury to reach an inference of discrimination. And because we're talking about juries, this, certainly, both of these cases do not really... Well, we're not talking about juries yet. We're really, we're just at the 12B6 stage, so you don't need a whole lot of specificity or looking behind the complaint. Absolutely, Your Honor. I was just referencing the Suazo decision. And because Suazo, as well as the Mitchell v. Toledo Hospital, a Sixth Circuit case, which we cite in our on page 18 and 16, respectively, those were dispositive motions, meaning beyond the 12B6 pleading stage, Judge Thacker, to your point. And so, if we're talking about inferences of discrimination to reach a jury, this is certainly beyond the scope of where we are right now at the 12B6 pleading stage. Well, I don't think there's any contention that the altercation outside of Norma Jean's nightclub reflected favorably upon the police department. I mean, you simply don't want police officers of whatever rank or whatever engaging in the kind of conduct that took place outside of this nightclub. And Baltimore has had some real problems of all kinds of nature about the nature of its police department. And I think that in this case, they were interested in, they seemed to be interested in dismissing and imposing discipline against someone who was engaged in this kind of misconduct. And one of the things that struck me here was that the Baltimore authorities didn't just go off without carefully considering the evidence. They did not shoot from the hip. These whole proceedings, as I understand it, the investigation and the trial and everything, they took quite a bit of time, didn't they? I mean, from the time of the altercation to the time of the final trial board decision was something like a three-year process. And so it didn't seem to me that this was a situation where someone headed in for somebody else. And it also seemed to me a situation where very often in a 12B6 situation, you don't have the advantage of a trial court proceeding or a trial board proceeding that took a number of, an investigation that took a number of years, apparently, to complete a trial board proceeding, which went on for days and issued adverse findings. And of course, we know that 12B6, you don't get, you don't get quick shoot from the hip dismissals. But here, this was behavior that did not reflect favorably upon the police force. And these people did not shoot from the hip. The authorities did not shoot from the hip. They took a lot of time investigating it. They were faced with three different charges of false statements and failures to notify supervisors and assault. And I just don't know why I think there's some advantage in allowing this very, very troubled police department to impose discipline on someone, on somebody who was involved in an altercation that simply don't reflect standards of police conduct the way we would all want. Part of the problem is that the police in many cities are just on the loose. And that results, in many instances, in racially discriminatory behavior on the part of the police. But in this case, you seem to seem to have a situation where somebody is, their conduct simply doesn't reflect the kind of behavior we would like to see in all of the metropolitan police departments, many of which barely need reform because of, in my judgment, racially discriminatory actions. Thank you for the question, Judge. So first, I just want to make it very clear for the panel that this is not actually a situation where Ms. Johnson, in fact, engaged in the conduct as it was alleged in charge. Let me ask some questions in that regard. The Cushaw, Sergeant Cushaw, is the one who was convicted of assault for what happened at the club that night, correct? That's correct, Your Honor. And how was he disciplined by the police department? I don't know that he was disciplined at all, to be quite honest, Your Honor. Perhaps that's a question the department can answer. But nevertheless, he, my understanding is he still, in fact, to this day, works for the department. And with respect to appellant, the Office of the State's Attorney declined to prosecute her, correct? That's correct, Your Honor. And she was fired? Correct, Your Honor. And to that point, Your Honor, going back to Judge Wilkinson's question, I think if Your Honors look to JA50, JA51, JA52, JA53, JA54, you will see that there are at least 16 different examples of conduct by officers, sergeants, and lieutenants who respectfully, seemingly engaged in way more severe and egregious conduct that would have the department in general in disrespute versus the, quote, unquote, alleged false statement that Ms. Johnson supposedly engaged in, which body-worn camera indicates is not true, which the criminal affairs investigations that are recorded indicates is not true. And the State's Attorney declined to prosecute? Correct. And in fact, used her as a witness in the prosecution of Mr. Cusho? Correct, Your Honor. And was that prosecution upheld? It was. On appeal? My understanding is it was. And that is potentially why he is still working there. But nevertheless, he was not, to Your Honor's point, subjected to the disciplinary proceeding. And I know my time is running short, but I do just want to address the timeline issue. So it took quite a lot of time to actually investigate these cases. In fact, they're supposed to be charging people within a year and a day of the alleged offense. Here, it took three years for something to come full circle. So really, what happened is, once the appellant testified in January of 2019, this is prior to her also having her overtime request blocked. And you're saying when she testified against Officer Cusho? Officer Cusho, in favor of the jury convicted? Correct. Yes. And then on September 2019, the proceedings were held. And this is on page five and six of our briefs specifically. I'm sorry, of our briefs specifically. It talks about the fact that he was found guilty of assault October of 2019. He did file an appeal of this guilty verdict. Apparently, he was suspended and placed on supervised probation pending the appeal of his verdict. He wasn't fired after he was convicted of assault? Correct. It says, Appley ultimately chose not to pursue his removal. And so the melee Judge Wilkinson that you're referencing was actually caused by Sergeant Cusho. It was not caused by the appellant. What actually happened was the two women that were originally starting this situation came into the private space and were advised that they were in a private space, a reserved space in this nightclub. And they, in turn, began to, you know, get loud or have this commotion caused. It was not the appellant in this case, Ms. Johnson, who was the aggressor. She did not assault anyone. She was alleged to have assaulted someone. But even when you go back into the investigative file and see that it was actually subsequent interviews of those two alleged assailants. It wasn't just the assault, was it? It was the false statements? Correct. And we would report that that's not true either. Ms. Johnson was accused of making false statements during the investigation. So the authorities here felt that she was not being forthright and honest with them, that she was making false statements and that she was lying or misleading the authorities during the course of the investigation. And one thing I would say is that you can't ask a police department to, they want to operate on a, in a medium of trust where they had, where they, where they, where they trust what officers are telling them. And in this instance, they were making, the problem with her was she, she undermined the trust that people could have in her in, in two ways. They, her supervisors were never once notified of the incident and false statements were given on two separate occasions about the incident. And you can't have a department where someone is misleading other people within the department, making false statements, failing to notify people of incidents involving. You have to have police officers notifying their superiors of incidents so that corrective action can be taken. And you have to have police officers making truthful statements to those around them. And a police department cannot operate in the absence of trust. And the trust was undermined in two specific ways. And that just doesn't lead to the kind of environment that the public is looking for on the part of police. There has to be a certain internal integrity to it. And that was what was absent here. Your Honor, if I may respond to that, because I understand that my time is short. Specifically, Your Honor, to that point, the department still has officers to your point of trust, who have used the N-word to applicants for employment, who have been found guilty of DUIs, who have actually assaulted people, who have been found drunk and disorderly at a bar. This is JA-51. Just some examples, there are different domestic assaults where you have officers in relationships with one another assaulting each other. You have sustained uses of force to members of the public where officers are beating up members of Baltimore community. And so absolutely, I agree, Your Honor, you absolutely should not have officers engaging in this type of conduct. But a false statement and compare it to a DUI and compare it, which endangers the livelihood of the Baltimoreans and other pacifiers on the street, a department that has sergeants who are found disorderly and drunk outside of a bar, such as Major Keira Saunders, a white female, JA-51. Also, you have Major James Hanley, who called apparently, allegedly, an applicant effing N-word, JA-50. You also have lieutenants with sustained DUI cases. And so it goes on and on. And so to your point, Judge Wilkinson, we would agree, you should not have these type of members in the department. But if you're not going to have these type of members in the department, make sure you have all of these members who engage in more egregious conduct than a false statement, such as a DUI, such as domestic violence and abuse. Well, I wonder how, because I see that with metropolitan police departments, I see they have a lot of problems. And I think there's a lot of problems with police work. But the question is, how are we going to reform these things? We want there to be equitable treatment of everyone, absolutely. But on the other hand, when you throw up such obstacles to an effort to, say, this individual because of this altercation and because of false statements and because of failure to notify people, when you say, well, no, we're not going to dismiss the case at this stage, notwithstanding the careful analysis of the district judge, you really are making it more difficult to get to where we want to be. And that is, I think, a police department that treats all of its citizens equitably and also within the department itself has a mutuality of trust that will enable the department to function effectively. And I think that you and I share a common interest in seeing these departments improve and be more racially fair, and they're not. And there are an awful lot of instances where black citizens are treated unfairly by police departments, and we share that. And that's why I do understand where you're coming from, and I respect it a great deal. But I'm also thinking at it from my perspective, there has to be some kind of internal trust involved if we're going to get beyond step one and step two in trying to make police departments better for all concerned. And so that I'm not at all antagonistic about this. But I do think there's a critical question of internal operation and mutual trust without which a department, no, nobody can function. No corporation, no company can function if subordinates are not reporting incidents to superiors. And if people are making false statements, you can't have any company function with that kind of situation, which lowers morale on the part of everyone. And police departments in that sense, they're no different. They're has to rely on employees being truthful with it. That's all I'm saying. If I may respond, Judge? Absolutely. I agree with you 100%. But this is not a situation where there was something that occurred in a silo and Ms. Johnson's supervisor was not aware. This was a responded to incident in a public street, really, where you already had a sergeant who apparently went viral, I know that's not in our brief, for beating this other officer in the face. This was well known widely throughout the department. It was widely known throughout the Baltimore community. And quite frankly, because it went viral on social media, because there was a recording of this, it was well known throughout the country. That's right. But the chain of command still requires a report. And so from that point, you get the individual's view of it, when they report it, and they, they can write it up and they can set the wheels in motion and they want her views. So you do rely on reporting it. But she was an off duty officer. She was, in the time she was not working in the scope of her position as a police officer. And you may say, well, just like being a lawyer, you are always a lawyer, you're always a police officer. But this is not a situation of something that occurred when she was at work, when she was performing the duties of her responsibility as a Baltimore police officer. I want to say how much I appreciate your argument. And you've also reserved some time for rebuttal. But I want to ask my colleagues, if they have any questions of you. Thank you, Judge. All right. Thank you very much. Thank you, Your Honor. Thank you, Judge King. Good morning, Your Honors, and may it please the court. My name is Christine White, and along with my colleague Natalie Amato, I represent the appellee of the Baltimore Police Department. Counsel for Ms. Johnson would have this court believe that this case is far more complex than it really is. In fact, this is a straightforward dismissal of an amended complaint for failure to state a plausible claim of entitlement to relief. Ms. Johnson challenged... There are three claims. Correct, Your Honor. There were five before the district court, and Ms. Johnson has appealed three of those rulings by the district court. Neither of those three claims, neither of those rulings that Ms. Johnson challenges warrants reversal by this court. So as to the claim of Title VII race-based discrimination, whether the inability to work overtime is an adverse employment action is really immaterial, because the discrimination claim ultimately fails due to the fact that Ms. Johnson failed to present sufficient factual allegations from which a court could reasonably infer that her proposed comparators were similarly situated. Really? I mean, there's a whole list. There's 12 of them, some with a variety of different allegations of misconduct laid out there, and we are at the 12B6 stage, which does not require an inordinate amount of specificity. And there doesn't have to be a one-on-one match of comparators, not even at the merit stage, so certainly not at the 12B6 stage, I wouldn't imagine. Correct, Your Honor. We don't disagree with the legal standard. What we believe is the facts that have been alleged do not satisfy that legal standard. What more could you... You want 24 comparators that have engaged in a variety of similar crimes with different outcomes? Your Honor, respectfully, I would say... It's almost enough to have one comparator, the one who was there and was convicted of assault, and then what happened? His conviction was confirmed? Yes, Your Honor. He was convicted of second-degree assault. And did he, like appellant, he must have gotten terminated then for that, right? He was not terminated, Your Honor. I will point out... So what? So he was treated differently for being convicted of assault? Well, Your Honor, I will point out, and counsel for Ms. Johnson has represented this... He does still work at the police department? He does, Your Honor. He what? He does? He does? Correct, Your Honor. It's my understanding that Sergeant Cushall does still work for the Baltimore Police Department. So he was convicted of the assault that started this whole thing? Yes, Your Honor. Appellant testified against him at his trial in order to achieve the conviction on behalf of the state, and then it was confirmed on appeal... Affirmed on appeal, he still works for the police department, and appellant was terminated, and the prosecutor declined to prosecute her for anything, correct? That's my understanding. There was a declination letter, correct? This makes no sense. Well, Your Honor, what I will point out... Unless there's some sort of... It makes enough sense for there to be sufficient comparators in this complaint at a 12B6 stage. Your Honor, what I think is important with respect to Sergeant Cushall, and this is a representation of which the court can take judicial notice, and it's a representation that counsel for Ms. Johnson has made in another case that she filed against the police department, Sergeant Cushall is black. He is not outside the class of individuals with the same... But he's a man, so he's not a black woman... That's correct, Your Honor. As appellant is. Were there any civil suits filed against Sergeant Cushall as a result of this incident? There was a suit against the Baltimore Police Department and Sergeant Cushall, correct. And what happened to that? That lawsuit was in the federal court in the District of Maryland, and there was a jury verdict against Sergeant Cushall. For how much? It was 5.2 million dollars. 5. what? 2 million? I believe it was 5.2 million dollars. And he still works there? It is my understanding that Sergeant Cushall... But this complaint isn't sufficient to get beyond the 12B6 stage. For a claim of racial discrimination... Right, for a claim of racial discrimination. Okay. Or for a claim of retaliation. Let's go to the next one, retaliation. Sure. With retaliation, what I'll point out is that this is a Title VII case. Title VII protected activity is pretty specific in what it relates to. It relates to either participation in a Title VII based related proceeding, or opposing practices that an individual reasonably believes or that are unlawful under Title VII. The only protected activity that happened here was in February of 2021, when Ms. Johnson filed her complaint with the EEOC. By February of 2021, Ms. Johnson was well aware that the Baltimore Police Department was seeking the termination of her employment. That goes to the temporal issue that that appellant arguably has with regard... The challenge that she has with regard to the retaliation claim. Opposing counsel said, I might have gotten this wrong, but I thought I heard her say something like, the process was supposed to take no longer than one year and one day, and for some reason, it took over three years. Is that... So, Your Honor... Could you respond to that? Yes, and I'm sorry for interrupting, Your Honor. I'm glad that you brought that up. It was a point that I wanted to make. And so, generally, an officer needs to be charged within one year and one day. In this instance, there was a pending investigation by the State's Attorney's Office. And so, the one year and one day did not start until the first declination letter was issued, which was June 14th, 2019. I'll also note that this issue of the... I won't say the sufficiency. I'll call it the timing of the internal investigation and bringing the charges. That was already litigated in Maryland State Court. Ms. Johnson was charged... If you're going to retaliate against somebody, it doesn't take two years to do it. Well, unless... That's correct, Your Honor, and you were... What I'm saying is that retaliation is often swift and immediate. And if you're going to retaliate, you wouldn't spend two years going through something. Certainly, two years breaks the causal connection time link in some pretty significant ways. I think, to your point, Judge Thacker, to the extent that perhaps the investigation and the length of it may have been unfair in some way, that issue was already litigated before the Maryland State Courts. And contrary to the representations in Ms. Johnson's opening brief, the Appellate Court of Maryland reversed the State Circuit Court's decision with respect to the timing of bringing the charges and ruled that the charges against Ms. Johnson could go forward. They did rule that the charges against her husband were time barred, and so her husband, Mr. Thacker, was not investigated for that. It's disappointing that I think that this has somehow turned into a racial issue when there's no dispute that the altercation that took place that evening outside the nightclub was simply not good police work in any way, shape, or form. And when you combine the fact that the altercation itself was the kind of thing that would undermine confidence in the police department, and then you couple that with the ensuing problems that took place during the investigation's failure to notify initially, and then false statements after that, and you combine those two elements, the unseemly altercation outside of normal genes and the prevarication and misleading conduct that took place during the investigation of it, it cannot be that a police department is disabled somehow from taking disciplinary action or taking action only after years and years of litigation. It cannot be that these obstacles would be placed in the hands in front of authorities who I hope are trying to, and there's some evidence that the police department in Baltimore is aware of the problems, and they're serious problems, and there's some evidence that it's trying to eliminate those and improve the conduct of the department. And I just worry about the fact that courts are making that kind of effort at reform considerably more difficult. Well, thank you, Your Honor. I would point out that I think there is quite a bit of evidence that the Baltimore Police Department is trying to move away from the past and move forward and is making quite a bit of progress, has made quite a bit of progress. I think what's really important to point out when we're talking about the comparators, because that seems to be something that the bench is particularly interested in, is that... What bothers me with respect to these comparators, as well as the whole complaint, is 12b-6, we're supposed to accept the allegations as true. We're obliged to it in the standard of 12b-6. At this stage, even though the conversation here, the arguments, sound as if there's been full discovery in this case, and there hasn't been any. Well, I think, Your Honor, that... And correct, we are supposed to take the allegations as true with respect to the allegations as true. We must accept the allegations as true. There you go. Okay. So then there are six, at least six, alleged comparators that are alleged to have made false statements or failed to report incidents that were not terminated. Why aren't those sufficient comparators in a complaint at a 12b-6 stage? Well, we need to talk about the rank of the individuals, and when we look down to appropriate comparators, we can't compare majors to officers. They're subject to different forms of discipline and the disciplinary matrix as it applies to officers. That sounds like you're saying we have to have a one-on-one identical comparison, and they have to all be the same rank, and we agreed earlier, I thought, that the case law says that can't be. That is not the law. I agree that, and absolutely, Your Honor, the case law is that there does not need to be a one-on-one comparison, but there do need to be some, there do need to be meaningful comparison. The impression is being left that comparators were not disciplined in any way, shape, or form, and that's not correct. The comparators, in some cases, were demoted, had it noted on their record. They didn't, it wasn't as if those so-called comparators got off scot-free. They didn't, did they? I think talking about just, in general, the number of the comparators in a vacuum can make this conversation a little bit more, a little bit more confusing, a little bit more complex. And that's what discovery is for, and that's why, at this stage, it's more lenient in terms of Twombly and Iqbal and what needs to be pled. Well, respectfully, Your Honor, I would say when we look at the possible comparators, certainly looking at comparators, the two white female... And we accept the allegations of the complaint, well-pleaded allegations of the complaint as being true. Correct. Yes, we accept them as true. Not as being contradicted, but as being true. Just having two comparators, however, when I, and I'm referring to the two white female officers who were charged with false statements, they're at the Joint Appendix, Joint Appendix 51. There was a trial board hearing that was dismissed. A trial board hearing can be dismissed for a number of reasons. It could be because the officer pled guilty. It could be because the officer pled, pled to a lower offense. It could be because the officer was eligible for retirement and chose to retire. And so simply knowing... Again, that's what, that's what discovery is about. And there's not just two white female officers alleged as comparators for false statements. There's at least four others that are male officers. And then, I mean, there's, there's multiple allegations other than just the false statements and the disparate treatment. Well, when we look at conduct, and that's particularly important here because conduct is what led to this discipline. The disciplinary matrix that applies, that the Baltimore Police Department has, rates different offenses differently. And while... And that might all be very, you might, you might prevail going forward with all of this level of detail you want to get into. But we're at a 12B6 stage where we're looking at the complaint. And on the face of the complaint, I'm not sure why these comparators aren't sufficient. But I, and I would like to hear more about your argument on the, we haven't heard anything, I don't think, from you on Monell. Correct, Your Honor. Could, could you, in your time, talk about that? Absolutely, Your Honor. One more point, if I may, with respect to the comparators on the, at the 12B6 stage. Just because something might appear to be consistent with discrimination, doesn't mean it supports a reasonable inference. And I'll point to McCleary-Evans, and I'll point to cases before this court that have cited McCleary-Evans favorably, being B 4. The fact that there might be two people who perhaps received more favorable treatment, or did, does not support one of its own. Well, it's interesting to jump to a conclusion that, of course, there's discrimination here. Let me mention this whole point about discovery. The discovery here, you know, I just don't think it's enough to say, well, this is, you know, this is, you know, this is 12B6. The discovery here would, you know, I underestimated it by saying months. It would take years. It would be on, and on, and on, and voluminous, and voluminous, and voluminous. And if you're trying to get, to reform things within a police department that discipline, and this muscle for untoward conduct is better and more effective if it can be immediate. If it's going to be only after four or five years, or how long, however long it takes to go through all of this discovery, which we know from innumerable sources and from academicians, is becoming a more and more laborious process. And in the interim, what is being lost is the fact that discipline within a police department, on the basis of what seems to be a fair trial process, that the immediacy, that the immediacy of the discipline, which makes it more effective, is going to be lost simply after years and years of discovery and mitigation, or months and months, or however long it takes. The question is here whether someone is, whether the authority is faced with undisputed evidence, and this is, take it true, the undisputed evidence here is critical when looking at the complaint, and that is there was an unseemly, unseemly altercation outside Norma Jean's nightclub, and as far as I know, there hasn't been brought into any kind of genuine dispute or whatever, the fact that say, oh no, all of these statements that were given were perfectly truthful, and you can take a great deal of, under 12B6, a great deal of these facts that are listed in the complaint, and there are a great many things in here that are undisputed, and you can take them as true, you can take them as perfectly true, and you can say, well, there's still this altercation outside the nightclub, and there's still the problem of there being false statements, and you can take these as true, and you can say, well, there's still this altercation outside the nightclub, and there's false statements. I don't think the statement is true. You see what I'm saying? I do, your Honor, and thank you, and I will just note, before I discuss the Monell claim, that false statement is, it's, a police officer, no police officer can perform the essential functions of his or her job duty if they don't have integrity. False statement is an integrity violation, and the Baltimore Police Department simply has to take false statement charges seriously because it affects the integrity of the complaint, and we have, and we do believe that it affects our officers' ability to perform their job functions and testify in court. But not assault charges. Your Honor, Sergeant Cushall does still work for the department, that's correct. And your Monell argument, I suspect you have a solid argument there. Well, with respect to the Monell claim, in this case, Ms. Johnson has brought a condonation claim. A condonation claim, Monell claim, simply cannot survive at the 12B6 stage based solely on the appellant's own personal experience and references to the 12B6, and the Monell claim simply cannot survive at the 12B6 stage. And that's in reference to the 2016 Department of Justice report. Several courts, it hasn't come before this court, but several judges of the district court have noted that counsel's reference to the 2016 DOJ report as alleged sufficient factual allegations to support a Monell claim have been and are legally insufficient. This is a claim, this is an argument that we have seen from counsel several times before, several times before, where counsel was provided the opportunity to amend her Monell claim and failed to do so. And the law is crystal clear that this court cannot allow a Monell claim to go forward based on those kinds of allegations. To your basic point, which you made earlier, the police department simply has to take false statements and prevarication very seriously. And I haven't seen that brought into any kind of dispute, that these were false statements. I believe that Ms. Johnson disputed that before her trial. Oh, I know that. She did have a trial board, and the trial board did find her. But I'm talking about the trial court findings, the trial board's findings. Correct. Yes, Your Honor. And that's, you know, that is, that's the, we can say we need discovery and everything, but you already have a proceeding here that you don't have a situation where most complaints don't come with an adjudicatory proceeding underlying them. And in this case, you have a complaint, but you have an adjudicatory proceeding underlying it. And prior to the time that the complaint was, was, was filed. And you have findings from the trial court board that there were false statements made during the course of the investigation. Those are findings after, after a two-day hearing. And considerable discovery and interviews and things like that. And I'm not going to go into the details of that, because it went on before the two-day hearing. And if, if this complaint were just, you know, taken off the, if, if that hadn't been present, this would be a different case for me. But the problem I'm having here is that when you have a prior hearing, a prior adjudicatory proceeding, and you have factual findings by the trial board that false statements have been made, and that there has, has been misleading within the, misleading investigators and superiors within the department, that has to be taken seriously. And this takes this, this takes this complaint out of the usual 12B6 kind of reaction, because this complaint has a, has an adjudicatory proceeding, a trial court, a trial board proceeding, which took place prior. And you don't have that in so many, many other cases. Thank you, Your Honor. I think what that goes to is moving from the possibility of consistent with, to consistent with discrimination, to raising a reasonable inference of discrimination. If Your Honors have any other questions, I'd be happy to answer them, but otherwise we would respectfully submit on our briefs, and the Baltimore Police Department would ask that you affirm the lower court's decision. Thank you. Thank you. Ms. Lewis, we're happy to hear from you in rebuttal. Yes, thank you, Your Honor. There's so much I'd like to say. Yes, so thank you, Your Honor. There's so much I'd like to say specifically to some of the points you raised, Judge Wilkinson. First, it's important to understand that the trial court is the final decision on the department. And so while I certainly understand your argument, it's actually the police commissioner's final decision, and then subsequent to that, if there's an appeal, like I mentioned before, the PG County Circuit Court's decision that then subsequently becomes binding on the department. A trial board, yes, is an adjudicative process made up primarily of police officers. So in this case, if you have a situation where one of your fellow brothers and sisters in blue are going against the grain, I mean, I think living in America, we understand how that works. You are now immediately putting a target on your back when you go against your brothers and sisters in blue. That is largely what we believe undercuts this entire thing. So it's not just the fact that... And you mean, so by going against the other officers, you mean testifying at Sergeant Cushaw's trial... Going back to that, Judge Wilkinson, related to the temporal proximity argument here, you have to look at the totality of the circumstances. She essentially, the appellant, that is, put a target on her back by testifying, Judge Thacker, against Sergeant Cushaw in September of 2019. Then she's denied overtime. Then she complains internally about the fact that she's denied overtime. Then she files a February 16, 2021 EEOC charge. Then she files an internal complaint related to investigators making false statements against her. She follows up several times then about that investigation, which ultimately those supposed charges of false statements were not sustained. Then she receives the declination letters from the state attorney's office, and then she is charged with a false statement. Given the timing of it, were those responsible for the plaintiff's termination? Did they even know of the internal complaint and the EEOC charge? It seems to me that the internal affairs complaint and the EEOC charge were filed in September of 2019. Significantly prior to the investigation and dismissal? It's related, Your Honor, specifically to the fact that she put a target on her back when she testified in January 2019 against Sergeant Cushaw. But were the people who were responsible for the plaintiff's termination, did they even know of the internal complaint? So respectfully, Your Honor, two things. One, I think these are fact-based inquiries that are not appropriate for a motion to dismiss pleading stage. These are more appropriate for a merits argument. So you don't know if they knew or not? I don't know because I was not counsel related to it. How could we make a reasonable inference to connect to those based on the complaint alone? Because ultimately it's the police commissioner that makes the charge, the final decision related to the termination. And so here, the police commissioner is the mecca, if you will, so to speak, colloquially, the mecca. So that is the final decision. And so as it relates to these various charging decisions, and again, just referencing the fact that the district court did look at policy 310, which is the department's policy matrix related to disciplinary procedures, there is disproportionate and differential treatment as it relates to all the comparators here, including Ms. Johnson, who specifically, we argue and purport, is distinctively different by race and other protective characteristics from the other individuals who were not in fact terminated. And just to note the fact of what Sgt. Cushall's racial identity is, we actually don't fully know. All I can assert is what my clients tell me. We know he is a dark-skinned man. We don't know because we've not been through discovery what he actually identifies. He could be Asian. He could be Hispanic. He's a darker brown-skinned man. So yes, according to Ms. Johnson, he is not black or African-American, but he is a browner-skinned man. He could be Hawaiian. So just because someone, as we know in America, has a darker complexion does not automatically make them black or black-identifying. So I do think that it is important to note that for the record. Additionally, as it relates to the Monell claims, we do believe in our brief, as well as in our complaint, we have cited two specific instances, and I can read you those paragraphs, of where the Baltimore Police Department does, in fact, have a practice and custom. If you look at JA-66 through JA-68, specifically in our amended complaint, paragraph 79, 141, 142, 144, 152, and 153, these are all in our position and posture assertions of the practices that the Baltimore Police Department engages in that would make a Monell claim at this stage survive a pleading 12B6 stage. And so, for example... Practices with respect to its dealings with the general population or with respect to... Officers. Where is that? Is that in the DOJ report? That specifically is not. What's in the DOJ report is about the culture of retaliation as it relates to civilians in Baltimore. Right, and that is more the general population and not the police department. I was looking for something specific to the police department. Yes, understood, Your Honor. I mean, they are under constant monitoring, but for whatever reason, the Department of Justice has not monitored them for how they treat their own employees, which is a part of the issue here that we would purport. In terms of just going back to some of the other points that were made, we agree, Judge Wilkinson, that the department should be taking fair action, but it should not be taking unfair action when there is differences in protective characteristics. And that is our position as the appellant. Additionally, because you must accept these allegations as true, these differing factual inquiries that we've been having a very robust dialogue about from our posture exceeds the 12B6 pleading threshold. Additionally, as you called it, Judge Wilkinson, the unseemly altercation was started by a person that still works at the department. And I think that we cannot overlook that fact. Yes, we absolutely want to rip police departments, not just in Baltimore, but across the country, from bad and poor-behaving officers, because inevitably, that treatment and those experiences and conduct bleed into their constituents and the community residents that they are policing. But we cannot... Counsel? Yes, my time. Thank you. I thank you all for your time. My time is over, but all I can say is we appreciate the commitment you have to your case. Thank you. Thank you. I just want to make sure that my colleagues are satisfied. Are you okay with this? I'm good. I don't have any questions. Thank you, Your Honors, for your time. All right, we thank you, and let's adjourn court, and then we'll come down and say howdy. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker